SARTAIN, Judge.
Plaintiff-appellant Joseph A. Gettys brings this appeal seeking an increase in damages awarded him in judgment rendered in his favor and against Norris J. Broussard, Sr. and his insurer, Allstate Insurance Company, as a result of an automobile accident. Defendants stipulated liability prior to trial leaving quantum the only disputed factor in this suit.
The record before us shows that plaintiff was injured in an accident near Slidell, Louisiana on May 4, 1972 when defendant’s car struck plaintiff’s car beside which plaintiff was standing and caused plaintiff to jump or be flung over his car into the mud on the opposite side. Following the incident plaintiff was helped to his feet by Reneldar Nata, proprietor of a restaurant from which plaintiff had exited moments before the accident. Plaintiff was not hospitalized and in fact drove himself home from the scene of the accident in his own car.
The following day plaintiff consulted Dr. Richard R. Howard in Slidell. Dr. Howard’s deposition was taken and introduced into evidence. The testimony therein reveals that plaintiff had had a prior accident in 1967 wherein he sustained multi- *861 pie pelvic abrasions and multiple lacerations on the hands and face, injury to the chest with contusions and fracture of the ribs, as well as sprain of the upper lumbar, sprain of the right ankle, and a minimal cervical whiplash. Plaintiff recovered from this accident in the early part of 1970. Plaintiff’s history also showed that he had moderately severe coronary artery disease and severe angina with definite myocardial damage and an old healed myocardial infarction.
Plaintiff’s examination on the day following the accident which is the subject of the present suit revealed that plaintiff had developed a “rather marked pain in the lumbar region with radiation down both groins”. The doctor also stated that plaintiff suffered superficial abrasions on the fingers of his left hand which required an ointment and bandaids as treatment. Further examination revealed positive muscle spasm in the lumbar region. Dr. Howard diagnosed plaintiff’s injury as a lumbar sprain which he attributed to plaintiff’s accident. He then started plaintiff on physical therapy using Medithern treatments which were described as a combination of “ultra sonic and muscle massage.” Plaintiff received this treatment seven additional times between May 8, and May 23 of 1972. On June 14 plaintiff was checked again complaining of low backache but no muscle spasm was found.
On July 25, 1972, examination by Dr. Howard revealed general muscle spasm and tenderness over the abdominal region which Dr. Howard again associated with the accident. Plaintiff complained further of soreness around his groins.
Dr. Howard saw plaintiff again on September 13, 1972 at which time plaintiff stated that he felt he had injured his penis in the accident but had been too embarrassed to mention it. The doctor stated that plaintiff had informed him at that time that his penis had been sore and subsequently tender and that the soreness increased with a change of position on erection. Dr. Howard stated that at the time he felt it was only a bruising which caused the plaintiff’s condition. However, he later advised plaintiff to consult a G.U. specialist as the condition became progressively worse. The doctor then diagnosed plaintiff’s condition as a “chordee penis traumatic” which he attributed to the trauma plaintiff suffered in the present accident.
Plaintiff consulted Dr. Howard on numerous occasions thereafter for backache and the problem he was having with his penis. The doctor felt that the plaintiff’s subsequent pains were associated with the normal aging process and his arthritic condition, both of which he felt were aggravated by the injuries plaintiff had sustained in the accident. It appears further that some of the problems plaintiff experienced after the 1967 accident reoccurred following the 1972 accident despite the fact that plaintiff had not had any problems with the prior injuries since the latter part of 1970. Plaintiff was still seeing Dr. Howard for these complaints up until the time the deposition was taken which was October 1, 1974.
Apparently heeding the advice of Dr. Howard plaintiff was examined by a Dr. Jacob Fischman whose practice is limited to urology. Dr. Fischman’s examination revealed “a typical Peyronie’s Disease with stiffening and hardening of the median septum on the dorsum of the penis.” He stated that the Peyronie’s Disease caused plaintiff’s chordee which he defined as “a band of scar tissue causing deviation of the direction, if you will, of the penis from what it normally would assume.” Dr. Fischman indicated that chordees could be caused by other factors but that he felt in plaintiff’s case it was caused by Peyronie’s Disease because of the lack of evidence of any other cause.
Dr. Fischman was of the opinion that a single trauma could not cause Peyronie’s Disease and that the disease would take at least six months to manifest itself. He *862 noted in the present case that no bruise of plaintiffs penis was recorded at the time of the accident in spite of Dr. Howard’s thorough examination and further, the disease manifested itself only three months after the accident and since that time had progressed very slowly. He thus concluded that the accident had nothing to do with plaintiff’s chordee. He further felt that trauma could not cause Peyronie’s Disease even though authorities produced by plaintiff’s counsel indicated that trauma was a possibility, but in fact, the etiology of the disease was unknown.
It appears from the record that plaintiff suffered some dental injuries as well in the accident. Dr. Hallonquist, plaintiff’s dentist, testified that he extracted a tooth from plaintiff on May IS, 1972. The tooth was a lower central tooth and the extraction, in his opinion, was necessitated by the trauma suffered in plaintiff’s second accident. The necessary restorative work would cost $250.00 for a removable bridge and $900.00 for a fixed bridge. The doctor stated that either bridge would be satisfactory but that he preferred the fixed bridge.
Plaintiff’s testimony adduced at trial shows that at the time of the accident he was working with St. Tammany Realty Company as a real estate salesman. He stated that he had been unable to work since the accident due to pain and that the medicine he took for the pain made him too drowsy to pursue his duties. His working ability was further complicated in the latter part of 1973 when he suffered a heart attack which is not claimed to be related to the present accident.
Miss Joan O’Brien, owner of the St. Tammany Realty Company, testified at trial that plaintiff worked part time prior to 1971, but in 1972 immediately before the accident he was working full time. She estimated that he would have earned an income of $12,000.00 during the year 1972 had he continued to work the entire year. This was based in part upon the fact that he had earned over $3,000.00 during the first four months of 1972 and future prospects were favorable since plaintiff was working intimately in a popular housing program existing at that time referred to as the “235 Program”.
After receiving the above evidence the trial judge, in his written reasons, awarded plaintiff $5,000.00 for pain and suffering and concluded that the Peyronie’s Disease was not a result of the accident. He also found that plaintiff had failed to prove by a preponderance of the evidence any loss of income and plaintiff’s claim in that respect was denied.
The final judgment was ultimately signed and contained an award of $5,250.-00. We assume that $250.00 was added to the original amount stated in the written reasons to compensate plaintiff for his dental injuries which were not mentioned in the written reasons.
Plaintiff now alleges that the trial judge erred in not finding that plaintiff’s chordee was traumatically induced, in awarding insufficient general and special damages, and in failing to compensate plaintiff for loss of income as a result of his injuries.
For reasons hereinafter stated the decision of the trial court is affirmed in part and amended in part.
It is well settled that great discretion is vested in the trial judge in determining facts and assessing damages. Such conclusions shall not be disturbed absent manifest error in factual determination and abuses of discretion in quantum assessments.
With respect to plaintiff’s chordee the trial judge determined as a matter of fact that it was not related to the trauma suffered by plaintiff in the accident here in question. This was likewise the opinion of Dr. Fischman, whose expertise in the field of urology well qualifies him in these types of determinations. The only evidence offered by plaintiff in support of his *863 position is the testimony of Dr. Howard who ultimately referred plaintiff to Dr. Fischman due to Dr. Fischman’s specialization in the field. In light of all the medical evidence offered we can not say the trial judge committed manifest error in reaching the conclusion that the accident played no part in the causation of plaintiff’s chordee.
With respect to plaintiff’s second allegation of error in that the trial judge failed to award sufficient general and special damages, we find partial merit. In considering the general damages awarded plaintiff, which was apparently $5,000.00, we find no error noting that plaintiff did not require hospitalization, drove himself home immediately after the accident, hut did experience a lumbar sprain which in and of itself caused pain and which further aggravated certain preexisting arthritic conditions and prior injuries.
With respect to the award of special damages in the amount of $250.00 for necessary restorative dental work, we find that an increase of $650.00 is warranted as we are convinced from Dr. Hallonquist’s deposition that the fixed bridge work would restore plaintiff to a condition more like that which he enjoyed immediately prior to the accident.
We find no merit to plaintiff’s last allegation of error in the trial judge’s conclusion that the plaintiff failed to show by a preponderance of the evidence any loss of income resulting from this particular accident. The only testimony concerning disability was that elicited from Dr. Howard wherein he indicated that there was not anything in plaintiff’s injuries which would have kept him from pursuing the type of work (real estate salesman) in which he had been engaged just prior to the accident. The doctor further indicated that Soma compound, which he had prescribed for the plaintiff to alleviate plaintiff’s backache, could cause “slight drowsiness but this is usually very transient and minor in nature.” He testified that none of the other drugs which plaintiff was taking for injuries received in the accident could cause drowsiness. Thus we are unable to find sufficient evidence of any disability.
Accordingly, for the above and foregoing reasons, the decision of the trial court is affirmed in part and amended in part to increase the award of special damages by $650.00. All costs of this appeal are to be borne by defendant-appellee.
Affirmed in part and amended in part.